# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### ELKINS

**In re: PAT J. HERLAN, WV REAL ESTATE BROKER, INC., d/b/a Almost Heaven WV Realty,**

    Debtor/Appellant,

**v.**                                                    **Civil Action No. 2:10-CV-16 (BAILEY)**

                                                                              Bankruptcy Case No. 09-02665

**TIMBERLINE FOUR SEASONS RESORT, INC., and LONG RUN REALTY, INC.,**

    Appellees.

## MEMORANDUM OPINION AFFIRMING ORDER OF THE BANKRUPTCY COURT

Pending before the Court is an appeal by Pat J. Herlan, WV Real Estate Broker, Inc. (the "debtor") challenging the January 6, 2010, decision of the United States Bankruptcy Court for the Northern District of West Virginia in the debtor's Chapter 11 bankruptcy. In that decision, the bankruptcy court ordered the debtor to turn over a number of vacation home rental contracts to Timberline Four Seasons Resort, Inc., ("Timberline") and Long Run Realty, Inc. ("Long Run Realty"). For the reasons that follow, the Court **AFFIRMS** the decision of the bankruptcy court.

## BACKGROUND

On January 3, 2007, Timberline terminated the employment of Pat J. Herlan ("Herlan"), who had provided the resort's real estate division with brokerage services since 1991. At the time of her termination, Timberline demanded that Herlan turn over all of her

1

brokerage business, books, and records to another real estate brokerage, Long Run Realty, which is wholly-owned by a principal of Timberline. By agreement, Herlan had until June 30, 2007, to vacate Timberline's place of business and turn over all property.

Nevertheless, upon her departure, Herlan removed certain business records that Timberline claims are vital to the continued operation of its real estate division. These records included sales listing agreements, vacation home rental contracts, future reservation lists, and the trust accounts Herlan managed. On June 24, 2007, in an effort to retrieve these records, Timberline filed a petition for injunctive relief in the Circuit Court of Tucker County, West Virginia. Following a trial, however, the circuit court denied the petition on July 6, 2007. Timberline appealed.

On June 9, 2009, the Supreme Court of Appeals of West Virginia reversed, finding that Herlan was an agent of Timberline. **Timberline Four Seasons Resort Mgmt. Co. v. Herlan**, 223 W.Va. 730, 679 S.E.2d 329 (2009). Based upon the agency relationship, the court reasoned that Herlan had a duty of loyalty to Timberline, which would be breached if she were allowed to retain the real estate records and use them to her advantage. Accordingly, the court directed the circuit court to enter an order granting Timberline's request for injunctive relief, which called for, *inter alia*, a turnover of the vacation home rental contracts.

On October 6, 2009, the circuit court complied with the remand instructions, ordering that Herlan turn over the contracts "with lessors who were customers of Timberline in June 2007, and that are currently in the name of Pat J. Herlan, and/or Timberline Realty, Inc., and/or Timberline Resort Realty, Inc., and/or Almost Heaven West Virginia Realty, and/or

any Herlan associate . . ..” Subject to the circuit court's ruling on her motion to reconsider, Herlan agreed to turn over all real estate business records to Timberline at her attorney's office on November 17, 2009. At the October 21, 2009, hearing on the motion to reconsider, however, Herlan's counsel presented the circuit court with notice that Herlan had filed for bankruptcy. The circuit court denied Herlan's motion to reconsider but found that it could not continue to enforce its October 6, 2009, Order for injunctive relief in the face of the automatic stay.

On November 20, 2009, the bankruptcy court lifted the automatic stay with regard to all the real estate contracts in the possession of the debtor. Herlan then filed a Chapter 11 bankruptcy petition for the debtor on November 23, 2009, again triggering an automatic stay. A week later, on November 30, 2009, Timberline filed a motion in the Chapter 11 case requesting that the bankruptcy court order the debtor to turn over 73 vacation home rental contracts to Timberline. The bankruptcy court heard argument on December 17, 2009.

On January 6, 2010, the bankruptcy court granted Timberline's motion and ordered the rental contracts turned over to Timberline, the effect of which the court later stayed for a period of 14 days. Herlan was to turn over to Appellees "[a]ll homeowner contracts, customer (renter) information, banking and accounting records, mailing and marketing lists, vendor records and information, and all the historical records of account, including all computer records of any nature[]" on or before February 12, 2010. Herlan appealed and requested that this Court stay the January 6, 2010, order pending her appeal. After conducting a hearing on February 12, 2010, however, this Court denied Herlan's request and ordered Herlan to turn over all items as directed by the bankruptcy court to Timberline

on or before February 18, 2010. Herlan partly complied, turning over only 25 contracts. Timberline moved for the bankruptcy court to hold Herlan in contempt. Herlan defended against the motion by arguing that the individual homeowners for each of the remaining properties had terminated their contracts; thus, nothing existed to turn over. Though the bankruptcy court noted Herlan should have brought the termination issue to the court's attention earlier, it denied Timberline's motion as failing to demonstrate contempt.

## DISCUSSION

### I. Standard of Review

The district court sits as an appellate court in bankruptcy pursuant to 28 U.S.C. § 158(a), and reviews findings of fact for clear error and conclusions of law *de novo*. *See* 28 U.S.C. § 258(a); **Valley Historic Ltd. P'ship v. Bank of New York**, 386 F.3d 831, 835 (4th Cir. 2007) (citing **Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)**, 258 F.3d 315, 319 (4th Cir. 2001)).

### II. Analysis

The debtor raises two[1] issues on appeal, namely: (1) whether the bankruptcy court erred in finding that the 2009-2010 vacation rental contracts were not personal services contracts, given that Herlan personally provided the brokerage services involved with each contract; and (2) whether the bankruptcy court erred in finding that those contracts were subject to a constructive trust, given that Herlan left the employ of Timberline in 2007.

---

[1] Originally, in its Statement of Issues on Appeal, the debtor raised four issues on appeal. However, because the debtor presents only two of those issues in its brief, this Court will consider the remaining issues waived. Accordingly, the Court will address only the two issues hereafter outlined.

4

### A. The 2009-2010 Rental Contracts Are Not Personal Service Contracts

The debtor contends that the vacation home rental contracts are a type of personal service contract, which cannot be assumed or assigned under 11 U.S.C. § 365(c)(1) absent the consent of the homeowner. The debtor argues no homeowner has given consent. For the reasons that follow, however, this Court finds that the bankruptcy court correctly concluded that the contracts are not personal service contracts, and that section 365(c)(1) was not implicated.

A personal service contract has been defined as "[a] contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability." **In re Compass Van & Storage Co.**, 65 B.R. 1007, 1011 (Bankr. E.D.N.Y. 1986). Typical personal service contracts include "a contract to paint a portrait, write a novel, or perform other work requiring 'rare genius' and 'extraordinary skill.'" **Mehul's Inv. Corp. v. ABC Advisors, Inc.**, 130 F.Supp.2d 700, 705 (D. Md. 2001).

In contending that the rental contracts are personal service contracts, the debtor argues that Herlan's marketing of the properties constitute personal services. Specifically, the debtor cites the bankruptcy court's recognition that many homeowners were impressed with Herlan's marketing service, and ability to find "quality" renters for their units. Moreover, the debtor emphasizes that because most of the renters between 2007 and 2009 were new customers, marketing and promotion were integral to maintaining the contracts. As a result, the debtor asserts, the homeowners have established a confidence in Herlan's ability to market their units effectively. Finally, the debtor argues that because the contracts submit all decisions concerning the day-to-day operations of the properties

5

to its discretion, and Herlan is the sole licensed broker, the homeowners have indicated they are relying on Herlan's specific skill, knowledge, and experience as part of a fiduciary relationship between Herlan and the homeowners.

This Court finds none of the debtor's arguments sufficient to support a finding that the vacation home rental contracts are personal service contracts. Like the bankruptcy court, this Court is not convinced that marketing and managing vacation home rentals requires "rare genius" or "extraordinary skill." As the Supreme Court of California once timelessly noted, "All painters do not paint portraits like Sir Joshua Reynolds, nor landscapes like Claude Lorraine, nor do all writers write dramas like Shakespeare or fiction like Dickens. Rare genius and extra-ordinary skills are not transferable, and contracts for their employment are therefore personal, and cannot be assigned." **Taylor v. Palmer**, 31 Cal. 240 (1866). But rare genius and extraordinary skill are not indispensable to the advertising and upkeep of rental vacation homes. Similarly, this Court is not persuaded that the contracts contemplate the special knowledge, judgment, taste, skill, or ability of Herlan as a condition of performance. Finally, that Herlan holds a real estate license does not automatically make any agreement executed in that capacity a personal service contract. For these reasons, this Court finds that the bankruptcy court was correct in concluding that the vacation home rental contracts are not personal service contracts.

As a further reason for affirming the bankruptcy court's conclusion on this point, this Court finds that 11 U.S.C. § 365(c)(1) is entirely inapplicable. As the bankruptcy court correctly noted, the turnover of the rental contracts cannot be reasonably classified as an assignment. Instead, the turnover merely constitutes a legal recognition that the contracts were the property of Timberline, their equitable owner, when Herlan took the contracts and

transferred them to the debtor. Accordingly, this Court finds that the bankruptcy's order does not implicate section 365(c)(1), and thus cannot constitute a violation thereof.

### B. The 2009-2010 Rental Contracts Are Subject To A Constructive Trust

Next, the debtor contends that the 2009-2010 vacation home rental contracts should not be subject to a constructive trust because they are "new" contracts, not "renewals" of the previous contracts. Timberline stands by its argument that these contracts are the "fruit of the poisonous tree," referring to Herlan's misappropriation of the 2007-2008 contracts. For the reasons that follow, this Court agrees with Timberline's characterization and finds that the bankruptcy court did not err in finding these contracts subject to a constructive trust as "profits" from Herlan's breach of fiduciary duty.

The purpose of the imposition of a constructive trust is to prevent unjust enrichment. RESTATEMENT (FIRST) OF RESTITUTION § 160 cmt. (a) (1937) ("A constructive trust . . . is imposed as a remedy to prevent unjust enrichment."). More specifically, the purpose "is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property." Id. at cmt. (d). Thus, not only the property, but profits from the property are subject to surrender. Id.; *see also* **Bank of America v. Ryan**, 207 Cal.App.2d 698 (Cal. Ct. App. 1962) (stating that if a constructive trust is to be imposed on money and other property, the beneficiary therefore is entitled to recover rents, income, and profits on such property). As a result, the sole determination

7

required by this issue is whether the bankruptcy court erred in categorizing the 2009-2010 rental contracts as profits from the previous, misappropriated, contracts.

In reaching this conclusion, the bankruptcy court found that Herlan's practice was to have homeowners sign renewal contracts before the previous contract had expired. The debtor argues this finding is clearly erroneous because the agreements were, in fact, "new" agreements, and thus, Herlan's execution of them could not have constituted a breach of the fiduciary duty she previously owed to Timberline. In support of this argument, the debtor emphasizes that the contract states that the agreement "replaces all prior Rental Agreements for this unit." The Court finds this argument unavailing as merely semantical and irrelevant. What is important is that the homeowners were continuously under contract with the debtor, leaving Timberline unable to compete for the homeowners' business without violating West Virginia's statute prohibiting the inducement of a contractual breach. As such, the bankruptcy court was correct in holding that the 2009-2010 contracts were the profits of Herlan's original misappropriation. Thus, the bankruptcy court properly imposed a constructive trust on those contracts to avoid any further unjust enrichment.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the bankruptcy court's decision should be, and hereby is, **AFFIRMED**. It is further **ORDERED** that this appeal should be, and hereby is, **DISMISSED** and **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to the Clerk of the United States Bankruptcy Court for the Northern District of West

Virginia.

**DATED**: May 17, 2010.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE